UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

No. 97-74042

Plaintiff,

District Judge Marianne O. Battani

v.

Magistrate Judge Laurie J. Michelson

BONNIE L. PLESCO,

Defendant,

and

GREAT LAKES MEMBERS CREDIT UNION,

Garnishee.

_____/

## **REPORT AND RECOMMENDATION TO SET ASIDE DEFAULT JUDGMENT**

The Government filed suit against Defendant Bonnie Plesco Andrew ("Defendant" or "Andrew") for unpaid student loans. On March 9, 1998, the Clerk of the Court entered a default judgment in the amount of $6,220.35 plus pre- and post-judgment interest because the Defendant failed to plead or otherwise defend against this action. (Dkt. 6.) Over a decade later, on January 20, 2012, in its continuing effort to collect on the default judgment, the Government directed a Writ of Garnishment to the Great Lakes Members Credit Union where Defendant has an account (Dkt. 15). On February 15, 2012, Ms. Andrew, acting *pro se*, filed an objection to the Writ and a Request for Hearing. (Dkt. 18.) Defendant contends that she was living in Florida at the time of the initial lawsuit and was never served with the summons and complaint. (*Id.*) She also contends that the funds in the Credit Union account are social security disability proceeds and thus exempt from garnishment. (*Id.*) The matter was referred to this Court pursuant to 28 U.S.C. § 636(b)(3) for the

hearing. (Dkt. 23.) The Government filed a Response to Andrew's request (Dkt. 21) and Defendant submitted documents in reply (Dkt. 25). The Court held a hearing on April 11, 2012.

During the hearing, Defendant presented additional information to corroborate that the funds contained in the Credit Union account were from her social security disability payments. Thus, the parties entered into a stipulated order to release the Writ of Garnishment directed to the Great Lakes Members Credit Union and Plaintiff agreed to remit to Defendant the sum of $745.03. (Dkt. 28.) The Court also gave Defendant more time to gather and submit additional information to support her contention that she lived in Florida at the time she was allegedly served with the Complaint in this matter.

For the reasons set forth below and on the record at the hearing, the Court RECOMMENDS that the default judgment be VACATED.[1]

## I.     FACTS

The Government contends that Defendant took five student loans in 1985 and 1986 from Dearborn Bank & Trust Co. and the Michigan Higher Education Student Loan Authority to attend Oakland University. (Dkt. 21, Resp. at 1.) The principal amount of the loans totaled $5,660.00 at 8% interest per annum. (*Id.*) After Andrew defaulted on the loans in 1987 and 1988, they were paid by the loan Guarantor, Michigan Higher Education Student Loan Authority, who was then reimbursed by the Department of Education under loan guaranty programs authorized by Title IV-B

---

[1]This Court will proceed by Report and Recommendation on Plaintiff's post-judgment objections to garnishment. *See United States v. Beamon*, No. 09-11727, 2009 U.S. Dist. LEXIS 123092, *2 (Jan. 13, 2010) (citations omitted) *obj. overruled by* 2010 U.S. Dist. LEXIS 2628 (E.D. Mich. Jan. 13, 2010); *United States v. Wells*, No. 06-10589, 2006 U.S. Dist. LEXIS 83130, at *1 n.1 (July 20, 2006) *report adopted by* 2006 U.S. Dist. LEXIS 83124 (E.D. Mich. Nov. 3, 2006).

of the Higher Education Act of 1965, as amended, 20 U.S.C. §1071 *et seq*. (34 C.F.R., Part 682). (*Id.*) After the Guarantor was unable to collect the full amount owed, the right and title to the loans were assigned to the Department of Education. (*Id.*)

On August 8, 1997, the Government filed its Complaint seeking a judgment against Defendant for the remaining balance due on the student loans. (Dkt. 1, Compl.) The Return of Service on the initial Summons indicates that, on November 29, 1997, a copy of the Summons and Complaint were left with a "white male [who] refuse[d] to give name" at 4899 Trenton street in Detroit, Michigan. (Dkt. 7.) A subsequent summons was issued on December 22, 1997 ("Second Summons"). (Dkt. 2.) The Return of Service indicates that a copy of the Second Summons and Complaint were personally served on Bonnie Andrew on January 16, 1998 at the 4899 Trenton address. (Dkt. 2.)[2] Defendant failed to respond to the Complaint. As a result, Plaintiff requested and obtained a Clerk's Entry of Default on March 4, 1998. (Dkt. 5.) A Default Judgment in the amount of $6,220.35 plus pre- and post-judgment interest was entered on March 9, 1998. (Dkt. 6.) According to old court records, a copy of the Request for Clerk's Entry of Judgment by Default was mailed to Defendant at the Trenton Street address on March 2, 1998. (Dkt. 4.) The Request for Clerk's Entry of Default, however, does not include the address to which it was purportedly mailed. (Dkt. 3.) Defendant did not object or take any other action on the Default Judgment.

Thereafter, in an attempt to collect on the judgment, Plaintiff sought a Writ of Continuing

---

[2] In one place on the Return, the process server indicates a service date of January 16, 1997, yet in another place on the form indicates a date of January 16, 1998. Given that the Summons has an issuance date of December 22, 1997, the Court finds the correct date to be January 16, 1998. These differing dates, however, add to the confusion regarding service of process in this matter. Moreover, the form does not require a signature from the party being served and thus, Defendant did not sign it.

Garnishment directed to the Michigan Department of Treasury on August 29, 2002. (Dkt. 8.) On September 30, 2002, a copy of the Application along with Request for Hearing forms were served on Defendant by mail at a new address – 5422 Monroe Street in Dearborn Heights, Michigan. (Dkt. 9.) Two years later, on August 6, 2004, Plaintiff sought a Writ of Continuing Garnishment directed to SunTrust Bank. (Dkt. 10.) On August 13, 2004, a copy of the Application and Request for Hearing forms were mailed to Defendant at another new address – 1111 U.S. Highway, 17-92, Lot 28, Davenport Florida. (Dkt. 11.) For the first time, Defendant responded. On August 20, 2004, after speaking with a legal assistant at the law firm representing Plaintiff, Defendant sent a follow-up letter to Plaintiff's counsel complaining about the treatment she received during the phone call and advising that she was never served in this matter. (Gov.'t Resp., Ex. A.) More specifically, the letter states that Defendant could not have been served at the Trenton address in 1998 because she had not lived there since August of 1996. (*Id*.) The letter further explains that the IRS took her husband's tax refund in either 1997 or 1998 and she was advised that she would not be bothered again regarding the outstanding loans. (*Id*.) Defendant also advised that she is "contesting [a] judgment that I never knew of and [its] amount." (*Id*.) The first page of the letter indicates that a copy was sent to the United States District Court, Eastern District of Michigan. (*Id*.) If a copy was mailed, however, it was never docketed. Thus, there were no further proceedings on her attempted objection to the Writ.

It appears that Plaintiff engaged in no further collection efforts for nearly seven and one-half (7 ½) years. On January 20, 2012, a Writ of Continuing Garnishment was sent to Great Lakes Members Credit Union. (Dkt. 15.) On January 30, 2012, a copy was served on Defendant by mail to an address in Dearborn, Michigan. (Dkt. 13.) On February 3, 2012, Great Lakes Members Credit

4

Union filed an Answer to the Writ and identified a savings account in which Defendant has approximately $745.00 dollars. (Dkt. 14.) On February 8, 2012, the District Court entered an order directing the Credit Union to pay the money from the savings account to the Government. (Dkt. 16.) The Court indicated that Defendant had not requested a hearing to determine exempt property (*id*.), but her time to do so had not yet expired. Indeed, on February 15, 2012, Defendant filed the present Request for Hearing regarding the Government's garnishment efforts. (Dkt. 18.) The Request for Hearing forms indicate that Defendant had twenty days from receiving the notice of garnishment and/or the answer from the Garnishee to request such a hearing. (*Id*.)

Defendant is seeking, primarily, to have the default judgment set aside because she claims she was never served. The Government believes that a Lexis/Nexis Accurint print-out of a history of Defendant's addresses supports that she was properly served in 1997 at the Trenton Street address. At the hearing, and in her submissions, Defendant provided an (unsworn) chronology of her addresses from January 1995 through 2005. Following the hearing, she submitted some tax documents for 1997 and 1998 to support her contention that, in late 1997 and 1998, she lived in Florida. (Dkt. 29.)

## II. ANALYSIS

### A. Legal Standard

As an initial matter, the Court recognizes that Defendant is unrepresented by counsel. Therefore, her filings and arguments will be given a liberal construction. *See Martin v. Overton,* 391 F.3d 710, 712 (6th Cir. 2004) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)).[3] The Court

---

[3] As a pro se litigant, Defendant is not very familiar with court rules or procedure. Unfortunately, her litigation style includes personal attacks on the Court and Plaintiff's counsel. While the Court understands that she is frustrated by this process, such conduct is not the answer.

construes her Request for Hearing as a motion to set aside the default judgment.

Pursuant to Fed. R. Civ. P. 55(c), a default judgment may be set aside for good cause and in accordance with Rule 60(b). Rule 60(b) sets forth the following grounds for setting aside a default judgment: (1) mistake, inadvertence, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of the adverse party; (4) the judgment is void; (5) the judgment is satisfied, released or discharged; (6) any other relief justifying relief from judgment. Fed. R. Civ. P. 60(b)(1)-(6). The Court must apply Rule 60(b) "equitably and liberally . . . to achieve substantial justice." *United Coin Meter Co. v. Seaboard Coastal Line R.R.*, 705 F.2d 839, 844-45 (6th Cir. 1983). The decision to vacate a default judgment is entrusted to the trial court's discretion. *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002).

In *United Coin Meter Co.*, 705 F.2d at 845, the Court articulated three factors to be considered in deciding a Rule 60(b) motion: (1) whether plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. The Sixth Circuit has further explained that the "culpable conduct" factor is the most critical consideration in a motion to set aside a default judgment under Rule 60(b)(1):

> while it may be argued that the three factors are to be "balanced" by the court in determining whether to set aside an entry of default, balancing is demonstrably inappropriate when a court initially proceeds, as in the instant case, under Rule 60(b)(1). That is because the rule mandates that a defendant cannot be relieved of a default judgment unless he can demonstrate that his default was the product of mistake, inadvertence, surprise, or excusable neglect. It is only when the defendant can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two factors: the existence of a meritorious defense and the absence of substantial prejudice to the plaintiff should relief be granted.

*Waifersong, Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992).

In sum, in order to set aside a default judgment, a court must balance the *United Coin* factors and find that the relief is warranted under for the reasons set forth in Fed. R. Civ. P. 60(b). *See Thompson v Am. Home Assurance Co.*, 95 F3d 429, 433 (6th Cir. 1996); *Burrell v. Henderson*, 434 F.3d 826, 831-32 (6th Cir. 2006).

### B. Application of the *United Coin* Factors

#### 1. Culpable Conduct

In seeking to set aside the default judgment, Defendant does not rely on a specific provision of Rule 60(b). Her argument appears to be that she did not act with any culpable conduct because she was never served.

As an initial matter, "if service was improper, the default judgment is void and must be vacated" pursuant to Fed. R. Civ. P. 60(b)(4). *United States v. Murphy*, No. 99-1436, 2007 U.S. Dist. LEXIS 78020, at *5 (E.D.N.Y. Sept. 28, 2007). Indeed,

> The Sixth Circuit requires that a court set aside a default judgment if service of process was not proper. *See Jalapeno Prop. Mgmt., L.L.C. v. Dukas,* 265 F.3d 506, 515 (6th Cir.2001) (stating that "if the underlying judgment is void, it is a *per se* abuse of discretion for a court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)") (internal citations omitted) (emphasis in the original). Therefore, if service of process is not proper, the judgment is void, and the court must set aside Defendant's default judgment. *See United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1376–77, 176 L.Ed.2d 158 (2010).

*Perfect Score Co., Inc. v. Miller*, 1:09 CV 1189, 2011 WL 4540742, at *3 (N.D. Ohio Sept. 29, 2011); *see also Shipp v. Visions Sports Bar & Grill, Inc.*, No. 10-2598, 2011 U.S. Dist. LEXIS 143637, at *3-4 (W.D. Tenn. Dec. 12, 2011) ("A judgment is void under Rule 60(b)(4) 'if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.' One denial of due process under Rule 60(b)(4) is improper

7

service of process; accordingly, 'if service of process is not proper, the judgment is void, and the court must set aside [the plaintiff's] default judgment.'"(quoting *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 108 (6th Cir. 1995) and *Jalapeno Prop. Mgmt., L.L.C. v. Dukas,* 265 F.3d 506, 515 (6th Cir. 2001))); *Werner v. Kalamazoo Cmty. Mental Health & Substance Abuse Servs.*, No. 06-310, 2006 U.S. Dist. LEXIS 69453, at *10 (W.D. Mich. Sept. 19, 2007) (explaining that a "default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside under Rule 60(b)(4)") (quoting *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.,* 756 F.2d 14,19 (3d Cir. 1985))).

Rule 4(e)(2) of the Federal Rules of Civil Procedure requires (as it did in 1998) that when a waiver of service has not been obtained, service may be effected pursuant to state law or through personal service to the defendant or a person of suitable age and discretion at the defendant's dwelling. Fed. R. Civ. P. 4(e)(2). Under Michigan law, service may be effectuated on an individual by:

> (1) delivering a summons and a copy of the complaint to the defendant personally; or
>
> (2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee. Service is made when the defendant acknowledges receipt of the mail . . . .

Mich. Court R. 2.105(A)(1)(2).

Prior to the hearing, neither side provided very reliable evidence concerning Ms. Andrew's place of residence in January 1998 when she was allegedly personally served with the Complaint. The Court therefore retrieved the old case file and reviewed the two Returns of Service. (Dkts. 2,7.) But they too are not dispositive of the issue. The first attempt at serving Defendant in November

8

1997 at 4899 Trenton in Detroit, resulted in a copy being left with an unidentified white male. (Dkt. 7.) Perhaps recognizing the deficiency of this service, a second attempt was made a few months later. (Dkt. 2.) While the process server indicates, under penalty of perjury, that he personally served Bonnie Andrew, Plaintiff did not sign the form nor is there anything else to corroborate the process server's identification of Plaintiff. (*Id*.) And Defendant vehemently denies that it was her.

In her pre-hearing filings with the Court, Defendant contends that she ceased living at the Trenton Street residence in August 1996. (Dkt. 25.) She explains that she was residing in Kincheloe, Michigan from August 1996 through February 1997 and then moved to Davenport Florida, where she lived through 2004. (*Id*. at Pg ID 72.) She did not, however, provide an affidavit or other documentation supporting these claims.

Following the hearing, however, she provided the Court with tax documents related to her (and her husband's) 1997 filing. The records indicate that they were prepared in early February 1998 by a tax preparer in Florida. (Dkt. 29.) Further, they reference income earned in 1997 by either Defendant or her husband from employment with a roofing company located in Florida, Walt Disney World, and Brimley Area Schools (located in Kincheloe, Michigan). (*Id*.) The records, therefore, support Defendant's contention that she lived in Kincheloe, Michigan until February 1997 and then moved to Florida – i.e., that she was not living in Detroit, Michigan in January 1998 when she was allegedly served.

Defendant's conduct in this case is consistent with her version of the facts. She did not respond to the Complaint or the notice of default/default judgment or the 2002 Writ of Garnishment – that were all served at different Michigan addresses during a period of time she claims she was living in Florida. But when the 2004 Writ of Garnishment was served on her at the Florida address,

9

she did respond – and claimed to have no knowledge of this case. (Dkt. 21, Resp., Ex. A.)

On the other side, the only documentation provided by the Government was a Lexis/Nexis Accurint Report showing addresses for Bonnie Plesco and Bonnie Andrew (Defendant's married name). (Dkt. 21, Resp., Ex. B.) The Report, however, is unreliable on its face. For example, while the printout contains entries indicating the Defendant was living at the Trenton Street address in 1997 and 1998, it also shows her living on Monroe Street in Dearborn, Michigan at the same time. (*Id.*) There are other similar inconsistencies. (*Id.*)

Accordingly, evaluating the record as a whole, this Court finds that Defendant was not properly served pursuant to Fed. R. Civ. P. 4(e) and thus, the default judgment should be vacated pursuant to Fed. R. Civ. P. 60(b)(4). *See United States v. Williams*, No. 05-70153, 2007 U.S. Dist. LEXIS 64091, at *6 (E.D. Mich. Aug. 30, 2007) (finding the default judgment in a student loan collection case void under Rule 60(b)(4) where Plaintiff did not submit sufficient evidence to demonstrate that the summons and complaint were properly served); *Murphy*, 2007 U.S. Dist. LEXIS 78020 at *11-12 (same).[4] In light of this finding, Defendant has met her burden of showing that the default was not the result of her own culpable conduct. *See Amernational Indus. v. Action-Tungsram, Inc.,* 925 F.2d 970, 978 (6th Cir. 1991) (explaining that a party's failure to answer or defend is deemed culpable only if it displays "an intent to thwart judicial proceedings or a reckless

---

[4] This case is distinguishable from *United States v. Thomas*, 09-10304, 2009 U.S. Dist. LEXIS 83954, at *6-7 (E.D. Mich. Sept. 15, 2009), where the Court declined to set aside a default judgment in a student loan case for improper service of process because the Plaintiff presented public record evidence – e.g., driver's license and registration renewal – identifying Defendant's address as the one where she was served and rebutting Defendant's affidavit that she had not lived at that address for 20 years.

disregard for the effect of its conduct on those proceedings.")[5]

## 2. Other Factors

While the Court's ruling on the Rule 60(b)(4) issue likely precludes an analysis of the other *United Coin* factors, the Court will just briefly mention them here.

A defense is meritorious if "there is *some possibility* that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Williams,* 346 F.3d at 614 (emphasis in original). The test of meritoriousness is not "likelihood of success," but merely whether the claim or defense is "good at law." *United Coin Meter*, 705 F.2d at 845. Defendant contends that she believed the loans were either being paid by Michigan Rehabilitation Services or that they had been taken care of through an alleged garnishment of her husband's tax return. Thus, she meets the minimal standard.

In considering whether the Government would experience any prejudice if the challenged default judgment is set aside, the Sixth Circuit has stated:

> Trials on the merits are favored in the federal courts, and "a 'glaring abuse' of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default."
>
> * * *
>
> It is true that the plaintiff will suffer some delay in his recovery if a trial on the merits is held, but "'delay alone is not a sufficient basis for establishing prejudice.'" To establish prejudice, the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion. The plaintiff has failed to show how any of the above forms of prejudice would result from the reopening of this judgment.

---

[5] The notice of entry of default judgment also appears to have been mailed to an incorrect address. And the notice of entry of default does not identify the address to which it was allegedly sent. This is further support that the entry of the default judgment was not the result of misconduct by Defendant.

11

*Berthelsen v. Kane*, 907 F.2d 617, 620-21 (6th Cir. 1990). Here, Plaintiff has made no allegation or showing of prejudice and none is discerned aside from further delay. And that prejudice is nearly negligible in view of the litigation history of this case. The alleged debt dates back to 1985 and 1986. A lawsuit was initiated about eleven (11) years later. Later still, in 2002, 2004 and 2012, Writs of Garnishment were issued. There would be no significant impact on the case if the default judgment was set aside.

Thus, having analyzed the *United Coin* factors and Rule 60(b), the Court finds that Defendant is entitled to relief from the underlying default judgment.

### III. CONCLUSION AND RECOMMENDATION

Accordingly, this Court recommends that Defendant's Request for Hearing About the Garnishment (Dkt. 18) be construed as a Motion to Set Aside the Default Judgment and that the Default Judgment be VACATED.

### IV. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies,

through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

Dated: May 4, 2012

s/ Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 4, 2012.

s/Jane Johnson
Deputy Clerk